UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

LARRY JOHN GOODRICH,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,

_____/

Case No.  1:15-CV-1002

HON. RAY KENT

## OPINION

Plaintiff brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.  (ECF No. 9.)

Plaintiff was born in 1964.  PageID.94.  He has a ninth grade education and previous employment as a tile setter.  PageID.87, 249.  Plaintiff filed for benefits on May 29, 2012, alleging disability beginning July 30, 2011, due to lupus, rheumatoid arthritis, shingles, and depression.  PageID.94–95, 225–231.  An administrative law judge (ALJ) reviewed Plaintiff's claim *de novo* and entered a written decision denying benefits on April 25, 2014.  PageID.35–54.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be

reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (noting that the ALJ determines RFC at step four, at which point the claimant bears the burden of proof).

The ALJ determined that Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. PageID.40. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) subacute cutaneous lupus erythematosus; (2) degenerative disc disease, lumbar spine; (3) high blood pressure; (4) mood disorder; and (5) cannabis dependence. PageID.40–44. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.44–45. At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) and delineated here: he can lift and carry 20 pounds occasionally and less than 10 pounds frequently; he can sit 6 hours, and stand and/or walk 6 hours, in an 8-hour workday; he can occasionally balance, stoop, kneel, crouch, crawl, climb ramps or stairs; he cannot climb ladders, ropes, or scaffolds; he can occasionally push and pull with the lower extremities to include the operation of foot pedals; he cannot work around dangerous machinery or unprotected heights; he is limited to simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work related decisions, and in general, relatively few workplace changes; he is limited to occupations that entail occasional interaction with the general public.

PageID.45. Continuing with the fourth step, the ALJ found that Plaintiff was unable to perform any of his past relevant work. PageID.48. At the fifth step, the ALJ questioned a vocational expert to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The expert testified that Plaintiff could perform other work as a hand packager (150,000 positions), material handler (25,000 postions) and equipment cleaner (40,000 positions). PageID.88–90. Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. PageID.49.

Accordingly, the ALJ concluded that Plaintiff was not disabled from July 30, 2011, the alleged disability onset date, through April 25, 2014, the date of decision. PageID.49–50.

## DISCUSSION

### 1.     Plaintiff's Mental Limitations Were Properly Expressed.

Plaintiff first contends the ALJ erred in evaluating his mental impairments. He specifically argues with the following language used by the ALJ: "he is limited to simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work related decisions, and in general, relatively few workplace changes; he is limited to occupations that entail occasional interaction with the general public." PageID.45. According to Plaintiff, these "limitations are not expressed in terms of work related mental activities at all." PageID.471. It is true that agency rulings require that non-exertional limitations "must be expressed in terms of work-related functions," including the ability to "understand, carry-out and remember instructions, use judgment in making work-related decisions, respond appropriately to supervision, co-workers, and supervisors, and deal with changes in a routine work setting." SSR 96–8p, 1996 WL 374184,

5

at *6 (S.S.A. July 1, 1996); *see also* SSR 85–15, 1985 WL 56857, at *4 (S.S.A. Jan. 1, 1985). But Plaintiff fails to demonstrate how the language used by the ALJ funs afoul of this requirement.

Moreover, as the Sixth Circuit has recognized, while a "function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (citation omitted). Rather, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.* (citation omitted); *see also Rudd v. Comm'r of Soc. Sec.*, 2013 WL 4767020 at *9 (6th Cir. 2013) (noting that SSR 96–8p merely requires the ALJ to "address a claimant's exertional and nonexertional capacities and also describe how the evidence supports her conclusions"). The ALJ discussed the evidence of record and how such supported his RFC determination. As discussed below, the ALJ's rationale is supported by substantial evidence and is consistent with the authority identified above. Thus, this claim of error is rejected.

### 2. The ALJ Properly Considered Plaintiff's GAF Scores.

Plaintiff includes a brief allusion to the ALJ's consideration of his GAF scores. According to Plaintiff, the ALJ erred by failing to find that under these GAF scores, he was incapable of working. PageID.472–473.

GAF scores are subjective rather than objective assessments and are not entitled to any particular weight. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006); *see also Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 508 (6th Cir. 2013) (noting that "no particular amount of weight is required to be placed on a GAF score.") (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)); *Taylor v. Comm'r of Soc. Sec.*, No. 1:11–cv–1308,

6

2013 WL 1305291, at *9 (W.D. Mich. Mar. 28, 2013) ("The ALJ is not required 'to put stock in a GAF score in the first place.'") (quoting *Kornecky*, 167 F. App'x at 503 n.7); *Edwards v. Comm'r of Soc. Sec.*, 654 F. Supp.2d 692, 696 n. 3 (W.D. Mich. 2009) (collecting cases). "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009). "GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *see Kornecky*, 167 F. App'x at 503 n.7. The DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS' (DSM–IV's) explanation of GAF scale indicates that "a score may have little or no bearing on the subject's social and occupational functioning." *Kornecky*, 167 F. App'x at 511; *see Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir. 2011). "Significantly, the SSA has refused to endorse the use of the GAF scale." *Bennett v. Comm'r of Soc. Sec.*, No. 1:07–cv–1005, 2011 WL 1230526, at *3 (W.D. Mich. Mar. 31, 2011). GAF scores "have no direct correlation to the severity requirements of the mental disorder listings." *DeBoard v. Soc. Sec. Admin.*, 211 F. App'x 411, 415 (6th Cir. 2006); *see Richardson v. Comm'r of Soc. Sec.*, No. 1:12–cv–776, 2013 WL 5211245, at *5 (W.D. Mich. Sept.16, 2013).

Plaintiff ignores the controlling authority from the Sixth Circuit, and the decisions of this court, in favor of a decision from the Eastern District which is not controlling or analogous. PageID.472 (citing *Boruff v. Astrue*, 648 F. Supp.2d 932, 943–44 (E.D. Mich. 2009)). In *Boruff*,

Judge Nancy Edmunds considered a child's claim of disability stemming from his attention deficit hyperactivity disorder (ADHD). *Boruff*, 648 F. Supp.2d at 935. She found that on the administrative record before her, the ALJ's stated reason for rejecting the opinion of a consultative psychologist was not persuasive. *Id.* at 943–44. The ALJ had rejected the psychologist's opinion giving the claimant a GAF score of 50 on the ground that it "was not consistent with the medical evidence." *Id.* at 943. Judge Edmunds determined that this finding was not supported by substantial evidence because the underlying record showed that "five different experts," including a "treating psychiatrist" and non-treating psychiatrists, had supplied virtually identical GAF scores. *Id.* at 943–44. Here, by contrast, the ALJ considered the entire record, and noted that such scores were inconsistent with the evidence of record. PageID.47. The ALJ's finding is supported by overwhelming evidence. PageID.443, 447–448, 450. Accordingly, this claim of error is rejected.

### 3. The ALJ Properly Accounted For Plaintiff's Moderate Limitations in Concentration, Persistence, and Pace.

Plaintiff next argues that while the ALJ found Plaintiff had moderate difficulties in concentration, persistence or pace, the ALJ failed to account for these limitations in the RFC and hypothetical to the vocational expert. PageID.473. Plaintiff relies on *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010). Plaintiff's reliance on this authority, however, is misplaced.

In *Ealy*, the claimant's application for disability benefits was denied by the Social Security Administration following a hearing before an ALJ. *Id.* at 506. The medical record before the ALJ contained the conclusion by a physician that the claimant was limited to the performance of "simple repetitive tasks" in "[two-hour] segments over an eight-hour day where speed was not critical." *Id.* at 516. The ALJ expressly adopted this limitation. *Id.* The ALJ also found that the claimant "has moderate difficulties" with regard to concentration, persistence, or pace. *Id.* at 510.

8

Despite expressly adopting the limitation articulated by the physician, the hypothetical question which the ALJ posed to the vocational expert stated only, in relevant part, "assume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings." *Id.* at 516.

The Sixth Circuit found that the ALJ's reliance on the response to this particular question was improper because the ALJ, having expressly adopted the limitation articulated by the physician, "should have included [in his hypothetical question] the restriction that Ealy could work two-hour work segments during an eight-hour work day, and that speed of his performance could not be critical to his job." *Id.* The court concluded that because "Ealy's limitations were not fully conveyed to the vocational expert," the ALJ's reliance on the vocational expert's testimony could not constitute substantial evidence. *Id.* at 516–17.

Contrary to Plaintiff's argument, the *Ealy* decision does not stand for the proposition that a finding that a claimant is limited to "simple work" is somehow legally deficient. *See, e.g.*, *Clayton v. Astrue*, 2013 WL 427407 at *7 (S.D. Ohio, Feb. 1, 2013) (distinguishing *Ealy* and limiting it to its facts); *Steed v. Astrue*, 2012 WL 1097003 at *9 (N.D. Ohio, Mar. 20, 2012) (same); *Alonso v. Comm'r of Soc. Sec.*, 2011 WL 4526676 at *11 (W.D. Mich., Aug. 8, 2011) (same); *McGaha v. Astrue*, 2012 WL 762176 at *5 (E.D. Ky., Mar. 7, 2012) (same). Rather, *Ealy* simply reiterates the long-held notion that if the ALJ relies on the response to a hypothetical question, such question must accurately portray the claimant's limitations and be consistent with the ALJ's express findings. *See, e.g.*, *Clayton*, 2013 WL 427407 at *7; *Steed*, 2012 WL 1097003 at *9; *Alonso*, 2011 WL 4526676 at *11; *McGaha*, 2012 WL 762176 at *5.

A similar claim was discussed in *Pinkard v. Commissioner of Social Security Administration*, No. 1:13–cv–1339, 2014 WL 3389206 (N.D. Ohio July 9, 2014). That case

explained the difference between the findings made at step three to determine whether a claimant met the requirements of a particular listed impairment and the RFC determination made at step four as follows:

> Next, Plaintiff argues that the ALJ erred in concluding that Plaintiff had moderate difficulties in concentration, persistence, and pace, while failing to include an appropriate limitation for these difficulties in the RFC findings . . . Plaintiff refers to the ALJ's paragraph B findings in his evaluation of Plaintiff's depression under 12.04 of the listing of impairments [ ]. 20 C.F.R. pt. 404, subpt. P, app. 1 Sections 12.04, 12.05, 12.06. However, the ALJ does not have to include paragraph B finding[s] in his RFC finding. Paragraph B findings under the listings are findings at step three of the sequential evaluation process, and are not RFC findings pertaining to steps four and five of the sequential evaluation process. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.00.  Hence, the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a "moderate limitation in concentration, persistence, and pace" in his residual functional capacity finding at steps four and five.

*Pinkard*, 2014 WL 3389206 at *10.    In *Ealy*, the ALJ expressly adopted a specific limitation which he then failed to include in his hypothetical to the vocational expert.  Here, no such shortcoming or inconsistency exists.  The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed approximately 215,500 such jobs. PageID.88–90.  There was nothing improper or incomplete about the hypothetical question the ALJ posed to the vocational expert. Accordingly, this claim of error is rejected.

### 4. The ALJ Properly Considered the Opinion of Dr. Sven Zethelius.

Plaintiff next disagrees with the ALJ's statement that "no 'treating physician' imposed a work preclusive limitation on the claimant's functioning, or opined that he was

10

completely disabled." PageID.46.  Plaintiff appears to argue that Dr. Zethelius had provided work preclusive limitations through his diagnosis of major depressive disorder and learning disorder, as well as his assignment of a GAF score of 50.  These limitations, Plaintiff argues, should have been given controlling weight.  PageID.474–475, 478.  The Court disagrees.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.  *Gayheart*, 710 F.3d at 376.  Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any

11

subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

Assuming for the sake of plaintiff's argument that Dr. Zethelius qualifies as a treating physician, the Court finds no error here. For one thing, Plaintiff failed to include this argument in his statement of errors. As such, the argument has been waived.[2] *See York v. Astrue*, No. 3:12–cv188, 2013 WL 796288, at *5 (S.D. Ohio Mar. 4, 2013) (citing *Ealy*, 594 F.3d at 513); *Oudsema v. Comm'r of Soc. Sec.*, No. 1:11–cv1264, 2013 WL 588925, at *5 (W.D. Mich. Feb. 13, 2013). But even if the argument had not been waived, it would still fail. As noted above, and as recognized by courts in this district, ALJs are not required to put stock in GAF scores in the first place. *Kornecky*, 167 F. App'x at 511; *see also Ackermann–Papp v. Comm'r of Soc. Sec.*, 2008 WL 314682, at *2 (W.D. Mich. Feb. 4, 2008) ("[N]o treating source actually rendered a medical 'opinion'—properly understood—about Ackermann–Papp's ability to perform basic work activities during the relevant period, as a Global Assessment of Functioning ('GAF') score alone does not constitute a medical opinion.") (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). As noted above, the ALJ properly discounted the GAF scores in this case. In the same way, "the mere diagnosis of

---

[2] For the same reason, Plaintiff has waived his argument regarding a third party function report completed by E. Joann Deevers-Dean, Plaintiff's mother-in-law. PageID.474–475.

an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Comm'r of Soc. Sec.*, No. 99–3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000) (citing *Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988)). Therefore, Plaintiff cannot demonstrate that his RFC is in anyway inconsistent with Dr. Zethelius' statement and, accordingly, this claim of error is rejected.

### 5. The ALJ Properly Considered the Opinion of Mr. Jay Skaggs.

On April 8, 2014, Mr. Jay Skaggs, a limited licensed professional counselor, completed a Mental RFC evaluation concerning Plaintiff's impairments. Among other things, Mr. Skaggs stated Plaintiff suffered from a major depressive disorder as well as a learning disorder, chronic back pain, lupus, arthritis, and hypertension. Plaintiff's prognosis was "fair." PageID.436. Mr. Skaggs was asked to indicate the severity of Plaintiff's impairments in areas encompassing twenty different categories. He indicated Plaintiff had a marked loss in three categories, a moderate loss in ten categories, a mild loss in seven categories, and no loss in three categories.[3] PageID.438–439. The ALJ assigned only little weight to the opinion. PageID.47. Plaintiff claims the ALJ erred in doing so. PageID.474–478.

The Court begins by noting Mr. Skaggs does not qualify as an acceptable source. *See* 20 C.F.R. 404.1513(a). At most, Mr. Skaggs is either a counselor or a therapist, neither of which qualifies him as an acceptable source and as such his opinion is not entitled to any particular weight.

---

[3] The evaluation defined a marked loss as "ability to function in this area is seriously limited and your patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting for one-third (2 hours) of an eight hour work day." A moderate loss "means your patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting for more than four (4 hours) of an eight hour work day." Finally, a mild loss "means your patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting for more than two-thirds )6 hours) of an eight hour workday. PageID.438.

*See* 20 C.F.R. § 404.1513(a), (d); *see also Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 399 (6th Cir. 2014) (noting that an opinion from a therapist "is not properly classified as an 'acceptable medical source' opinion but is an 'other source' opinion"); *Matelske v. Comm'r of Soc. Sec.*, No. 1:12–cv–93, 2013 WL 4520202, at * 13 (W.D. Mich. Aug. 26, 2013). Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See* SSR 06–3p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006)). Mr. Skaggs' opinions fall within the category of information provided by "other sources." *See* 20 C.F.R. § 404.1513(d). The social security regulations require that information from other sources be "considered." 2006 WL 2329939, at * 1, 4 (citing 20 C.F.R. §§ 404 .1513, .1527); *see Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); *see also Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014). That standard was met by the ALJ here.

The ALJ expressly noted his obligation to consider "other source" opinions under SSR 06–3p. PageID.45. He then proceeded to set out a reasonable explanation for giving the opinion only little weight. PageID.47. He noted "the claimant obtained favorable response from counseling, and progress notes (including those authored by Skaggs) reflect stable clinical and emotional status." PageID.47. This statement is supported by substantial evidence. PageID.443, 447–448, 450. Accordingly, this claim of error is rejected.

### 6. The ALJ Properly Weighed the Medical Opinions.

Plaintiff next argues the ALJ erred in assigning greater weight to the opinions of agency consultants than Mr. Skaggs. Specifically, Plaintiff contends that the ALJ could not rely on

the consultants' opinion because the consultants had not reviewed the entire record. PageID.479. "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12-cv-2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). However, "[w]hen an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially when that evidence reflects ongoing treatment," the Sixth Circuit requires "some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (internal citations and quotation marks omitted). The ALJ gave sufficient indication here, explicitly noting in his discussion of the consultants' opinion that subsequent evidence "persuades the Administrative Law Judge that the claimant is confined to light exertional duties and that he in fact has a 'severe' mental [impairment] but none limited him beyond the parameters of the RFC adopted." PageID.47. Accordingly, this claim of error is rejected.

    Plaintiff finally argues that the ALJ erred in assigning more weight to the opinion of a consultative examiner, Dr. Timony Strang, than the opinion of his treating psychiatrist and mental therapist. PageID.479. "As a general matter . . . an opinion from a medical source who regularly treats the claimant (a 'treating source') is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a 'nontreating source')." *Gayheart*, 710 F.3d 365, 375 (6th Cir. 2013). As noted above, the ALJ properly discounted the GAF

15

scores in the record, including those from Dr. Zethelius. Moreover, the record does not indicate Dr. Zethelius had a treating relationship with Plaintiff. Indeed the December 30, 2013, visit identified by Plaintiff appears to be the first time Dr. Zethelius had examined Plaintiff. As regards Mr. Skaggs' opinion, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,'" including the medical opinion of a consultative examiner. SSR 06–3p, 2006 WL 2329939, at *5. The Court concludes the facts of this case do not support plaintiff's claim of error. The ALJ found Dr. Strang's conclusion was supported by the record while Mr. Skaggs' opinion was not. PageID.47–48. This conclusion is supported by substantial evidence.

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.


Dated: March 27, 2017            /s/ Ray Kent
                                 RAY KENT
                                 United States Magistrate Judge